The ESTATE OF Reyes BARRERA, Maria Rangel, Individually and as Next Friend of Moises Barrera, A Minor Child, Jose Barrera, Maria M. Barrera, and San Juana Barrera, Individually and as Next Friend of Cynthia Saldana Barrera, Appellants

v.

ROSAMOND VILLAGE LIMITED PARTNERSHIP and Rosamond Apartments Realty Corp., Appellees.

No. 14–96–01580–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 3, 1998.

Armando Lopez, Hector Patricio Sanchez, Houston, for appellants.

Sheila M. Humphrey, Houston, for appellees.

Before Justices EDELMAN, ANDERSON, and SEARS.*

## OPINION

ROSS A. SEARS, Justice (Assigned).

This is .an appeal from a take nothing judgment in a premises liability case based on the wrongful death of Reyes Barrera (Reyes). The Estate of Reyes Barrera, Maria Rangel, Individually and as Next Friend of Moises Barrera, a Minor Child, Jose Barrera, Maria M. Barrera, and San Juana Barrera, Individually and as Next Friend of Cynthia Saldana Barrera (collectively, Barreras) sued Rosamond Village Limited Partnership and Rosamond Apartments Realty Corporation (collectively Rosamond) for fail-

* Senior Justice Sears sitting by assignment.

ing to provide adequate security resulting in Reyes' death. The jury found Rosamond was thirty percent negligent and Reyes was seventy percent negligent for his death. The trial court entered judgment on the verdict, resulting in a take nothing judgment for the Barreras. In three points of error, the Barreras contend (1) the legal and factual sufficiency of the evidence did not support the jury's finding of Reyes' proportionate responsibility; (2) the trial court erred in entering a take nothing judgment as to the exemplary damages awarded because they are not subject to the proportionate responsibility statute; and (3) the trial court erred in entering a take nothing judgment as to the bystander injuries awarded because bystander recovery is a separate and distinct cause of action and not derivative of the wrongful death claim. We affirm.

## Background

One evening, Maria Rangel and her family, residents of the Rosamond Apartments, hosted a party in their apartment. Many of Rangel's relatives came to the party, including Reyes, Rangel's brother. As the party was about to conclude, Reyes went to his car, located in the parking lot, and listened to his radio. While Reyes was enjoying the music, an argument transpired between Reyes and some other men who were apparently attempting to break into a car also located in the parking lot. The men left the parking lot. Upon their return, Reyes was chased into the apartment where the other party-goers were located. Reyes and Rangel immediately turned off the lights and locked the door. The men threw a barbecue pit through the living room window and began banging and kicking the door. Reyes placed his body against the door to prevent their entry. One of the men fired two shots through the door, and both hit Reyes. Reyes staggered to one of the bedrooms and fell to the ground. Reyes died minutes later in an ambulance en route to the hospital.

## Analysis

### Legal and Factual Sufficiency

In their first point error, the Barreras contend the jury finding of Reyes' sev-

enty percent negligence was not supported by the legal and factual sufficiency of the evidence. Therefore, the Barreras argue they are entitled to the actual damages awarded by the jury.

When presented with "no evidence" or a legal sufficiency point, we consider only the evidence and reasonable inferences that tend to support the findings and disregard all evidence and inferences to the contrary. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). If there is any evidence of probative force to support the challenged findings, the no evidence point fails. *See id.* In reviewing the factual sufficiency of an adverse finding on an issue to which the other party had the burden of proof, the attacking party must establish that there is insufficient evidence to support the adverse finding. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). To review this, we examine the entire record, considering and weighing all the evidence, both in support of and contrary to, the challenged findings. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). The trial court's findings must be upheld unless the evidence which supports the jury finding is so weak as to be clearly wrong or manifestly unjust. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951); *Raw Hide*, 766 S.W.2d at 275–76; *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

If more than a scintilla of evidence exists, a legal sufficiency challenge will fail. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). More than a scintilla exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994)). This rule has been interpreted to mean that if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force then there is no evidence. *Convalescent Servs. v.*

*Schultz,* 921 S.W.2d 731, 735 (Tex.App.—Houston [14th Dist.] 1996, writ denied). However, if the evidence establishes a reasonable basis for reasonable minds to reach different conclusions as to the existence of the crucial fact, then it amounts to more than a scintilla of the evidence. *See id.* In addition, "[i]nferences may also support a judgment so long as they are reasonable in light of all the evidence." *Ortiz,* 917 S.W.2d at 772.

To prevail on their legal sufficiency challenge, the Barreras must prove that there was no evidence of Reyes' negligence. The Barreras' witnesses confirmed Reyes' presence in the parking lot. None of the witnesses produced at trial testified about what occurred in the parking lot because none of them were present. However, the police report was entered into evidence and provides some evidence of what transpired in the parking lot. It states that:

> [Reyes] got into an argument with the suspect earlier as the suspect was breaking into cars in the parking lot. Some time later, the same suspect returned to [Reyes] who was out in the parking lot and chased him to his own apartment and tried to follow him inside. The suspect shot through the front door, killing [Reyes].

Maria Rangel testified she heard screams coming from outside, went to the door, and saw Reyes running towards her. After he ran inside, they turned off the lights and locked the door. The people outside began kicking at the door and threw a barbecue pit through the window. Reyes placed his body against the door and the people outside shot twice through the door killing him. Rangel testified she did not know how much time elapsed between her brother's entry into the apartment and the gunshots. Jose Barrera testified he called the police in response to Rangel's request while the men were kicking at the front door and that this lasted approximately twenty to thirty minutes. However, he later testified he had not actually called the police until after Reyes had been shot.

The police report alone states (1) Reyes was involved in an argument with a group of men attempting to break into a car; (2) the men left the premises and sometime later returned; and (3) the men chased Reyes into his apartment and fired shots through the door. A reasonable inference can be drawn from this evidence that instead of calling the police, Reyes attempted to take the law into his own hands by preventing the break-in. The evidence of the men's actions such as leaving, returning, chasing, and shooting, also provides some evidence from which a reasonable inference can be drawn regarding Reyes' conduct.

We agree with Barrera that no one testified as to what occurred in the parking lot. However, the jury listened to all the testimony, judged the credibility of the witnesses, and made reasonable conclusions based on all the evidence. We hold that the police report and the subsequent events provide "some" evidence to support the jury finding. Moreover, in considering all the evidence in favor of and contrary to the verdict, we do not find that the jury verdict is clearly wrong or manifestly unjust. Therefore, the Barreras' factual sufficiency challenge also fails. Accordingly, we overrule their first point of error.

## Exemplary Damages

■ In their second point of error, the Barreras contend the trial court erred by entering a take nothing judgment as to the exemplary damages awarded because they are not subject to the proportionate responsibility statute. The basis of their argument is that regardless of whether Reyes was negligent, his negligence does not prevent the awarding of exemplary damages.

■ Exemplary damages cannot be awarded based solely on a finding of ordinary negligence but require a finding of willful conduct or gross negligence. *See Nabours v. Longview Sav. & Loan Assoc.,* 700 S.W.2d 901, 904 (Tex.1985); *Missouri Pacific R.R. Co. v. Lemon,* 861 S.W.2d 501, 517 (Tex. App.—Houston [14th Dist.] 1993, writ dism'd by arg.). Proportionate responsibility does not apply to a claim for exemplary damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.002(c)(2) (Vernon 1997). The reason for this rule is that exemplary damages are to punish the gross negligence of the defendant

in the interest of public policy rather than to compensate the plaintiff. *See I–Gotcha, Inc. v. McInnis*, 903 S.W.2d 829, 840 (Tex.App.— Fort Worth 1995, writ denied).

The Barreras' point of error is a correct statement of the law regarding exemplary damages and a plaintiff's negligence. However, exemplary damages require a finding of gross negligence before properly being awarded. The jury did not answer the gross negligence question and proceeded to answer the next question regarding the specific dollar amount of exemplary damages. Thus, it is clear from the jury's verdict that there was no finding of gross negligence.

■ A trial court cannot enter judgment on a verdict that leaves material issues unanswered, but must instruct the jury to deliberate further on the unanswered questions. *See Fleet v. Fleet*, 711 S.W.2d 1, 2–3 (Tex. 1986). However, the judgment will stand regardless of the incomplete verdict, unless the party who would benefit from the answers to the unanswered questions objects to the incomplete verdict before the jury is discharged. *See id.* at 3. The failure to object waives the trial court's error of entering the judgment on an incomplete verdict. *See id.*

■ The jury failed to answer the gross negligence question, and the Barreras failed to object before the jury was discharged in order to preserve this error for appeal. We overrule the Barreras' second point of error.

### Bystander Injury

■ In their final point of error, the Barreras contend the trial court erred in entering a take nothing judgment as to the bystander injuries awarded because bystander recovery is a separate and distinct cause of action and not a derivative of the wrongful death claim. Specifically, the Barreras argue

the jury findings on the wrongful death claim do not affect the bystander claims.

■ In Texas, only two situations arise when someone other than the direct victim of a tort may recover damages for mental anguish. *See Cavanaugh v. Jones*, 863 S.W.2d 551, 555 (Tex.App.—Austin 1993, writ denied). One situation is a suit brought under the Texas Wrongful Death Statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.001–.011 (Vernon 1997) (limiting recovery to a decedent's spouse, parents, and children). The other situation is a bystander suit brought by a plaintiff who has witnessed a close relative's death or injury caused by the defendant's wrongful acts. *See Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex.1990).

■ The bench mark case on bystander recovery is *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (Cal.1968). The Texas Supreme Court has cited *Dillon* with approval. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex.1997) ("We adopted the bystander cause of action in Texas based on guidelines set forth in [*Dillon* ]."). For a bystander to recover, he must first establish the three requirements delineated in *Dillon*.[1] Satisfaction of these elements does not establish an absolute right of recovery. A defendant is entitled to assert the affirmative defense of proportionate responsibility, if appropriate. *See Dillon*, 69 Cal.Rptr. 72, 441 P.2d at 916 ("In the absence of the primary liability of the tortfeasor for the death of the [victim], we see no ground for an independent and secondary liability for claims for injuries by third parties.").

■ Again, the Barreras' point of error is a correct statement of the law; however, a bystander's recovery is also subject to the victim's negligence. As we held above, the evidence is legally and factually sufficient to support the jury's finding of Reyes' seventy

---

1. 1. Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

    2. Whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of

the accident, as contrasted with learning of the accident from others after its occurrence.

3. Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Dillon*, 69 Cal.Rptr. 72, 441 P.2d at 920.

percent negligence. Therefore, the Barreras' independent bystander claims are barred, and we overrule their final point of error.

We affirm the judgment of the trial court.